Number 182261, Rolando Canata v. Anne Kaczmarek Good morning. Let's wait until your brother is seated, please. Okay. You may proceed. Good morning. My name is David Rich. May it please the Court, I represent Anne Kaczmarek. May I reserve two minutes? You may. Thank you. The basis of Mr. Panate's 1983 claim, which is count three of his complaint, is that Ms. Kaczmarek violated her Brady obligations owed to him. This Court, in reading, held under Imler, Supreme Court President, it is now a well-settled rule that a prosecutor cannot be held liable for the knowing suppression of exculpatory information. Mr. Canata, that is not the question before us. The question before us is your client's motion to dismiss based on absolute prosecutorial immunity. It's a serious and difficult case. We'd appreciate your help if you would please get to that. I agree with you, Your Honor. The basis of the claim against Ms. Kaczmarek, for which she is entitled to absolute immunity, is the allegation that she violated Brady. I didn't think that was the case. I thought her claim was that she conspired with others who had Brady obligations. There's not a claim that she had a Brady obligation that she violated. Well, I think if you look at the plaintiff's complaint, paragraphs 431, 433, 434, 437, the 1983 claim is premised upon her violation of Brady. It says it right in the complaint. You can read the complaint to make both of these, so why don't you assume that there is a conspiracy claim and move on? Well, Your Honor, let me try and focus in on that. The claims asserted against Ms. Kaczmarek, we allege, are protected by the absolute immunity doctrine because Ms. Kaczmarek at all times was acting as... She prosecutes the state chemist who is screwing up the results in the chemistry lab, and in the course of that, they do a search of the chemist's car. And the chemist's car contains notes in it of her mental health treatment, which revealed that she has drug addiction and suggests that she may have been helping herself to some of the drugs that are at issue in the criminal prosecution. Okay, that's one basket. The other basket is the criminal prosecution against a man alleged to be dealing in drugs. The drugs actually get sent to the chemist, and it is her results which are crucial to the prosecution of the criminal case. In the prosecution of the criminal case, I'll now call him the plaintiff, because the criminal case conviction was thrown out because of improprieties on the part of the prosecution in that case. So he then turns around and sues your client, who was the prosecutor, not of him, but of the chemist. So let's set aside the... No, I have one more point to make about the prosecution of the chemist. The mental health records actually are disclosed to the defense in that case, making it clear that the prosecutorial function in that case does not require the suppression of that evidence. Nonetheless, when the plaintiff asks for that same material, both generally to the attorney general's office, which is not prosecuting the case, the district attorney is prosecuting the case. And the district attorney says to the attorney general, I have to comply with these discovery requests. Turn over everything you have. And the claim is that your client conspired with other people to withhold the very evidence in the other prosecution, which she had disclosed when she was prosecuting the chemist. You make an argument to us, now we're going to put aside her actual prosecution, that her response in the prosecution of the drug dealer is somehow protected by prosecutorial immunity because you say it is derivative of evidence. And I'm going to ask you what you mean by that, and then whether you have any arguments other than your derivative argument. Because it's a little difficult to see how she was acting as a prosecutor when she wasn't really the prosecutor in the district attorney's case against the alleged drug dealer. So government lawyers are entitled to immunity when acting in an advocacy function. And that's in alert. Vandekamp, another Supreme Court, describes an advocacy function as requiring legal knowledge and the related exercise of discretion in whether and how to proceed. That's Vandekamp. Obviously not all government lawyers acting as advocates, no matter what the case, cannot be given prosecutorial immunity. You've read that law too broadly. How is her advocacy as to withholding the documents in the criminal case of the drug dealer within the prosecutorial function? She was required to exercise her legal knowledge and exercise discretion in determining what to provide to either the government or to Mr. Panate. That's true. You're exercising discretion today, bearing on your lawyer skills, making decisions. You certainly don't have prosecutorial absolute immunity for what you're doing here today. So you've got to show more than that she's acting as a lawyer. You don't have to show she's acting as a prosecutor. No, she's acting in an advocacy function as a government lawyer. I'm not a government lawyer. Suppose someone from the AG's office came up and made this exact same argument in the civil case today. You're saying that person would have absolute immunity? There are cases that extend absolute immunity to government lawyers in the civil context. That's Barrett, right? I'm sorry? Isn't it Barrett? Yes, Barrett from the Second Circuit. The state attorneys were given absolute immunity, not the federal attorneys. And the district court relied on the Second Circuit. If I understand your argument, just help me with it. In Barrett, the federal attorneys were not responding to any legal request for them to exercise discretion. They simply had failed to do something, which was to disclose it. So the Second Circuit says they don't get the immunity. The state actors, by contrast, were exercising some discretion, even though it was in a civil context. And they do get immunity. So I take your argument to be that the question here is, was your client, in responding to the request of I think it's Foster, correct, vis-a-vis how to respond to this subpoena, doing effectively what Foster was doing in responding to that subpoena, such that she would get the same absolute immunity you claim Foster would be entitled to? In part. In part. Absolutely. But again, Ms. Kismerick, at the moment that she is considering or exercising this discretion, she is actively then prosecuting Mr. Panate. And so I argue against her. I take that point. But as Judge Lynch was pointing out to you, a problem with that contention is that clearly she did not think the question of whether this material should be disclosed was important to her decision to prosecute the person she was prosecuting, because she had disclosed that information to that person. So that does undercut that contention. If we put that aside, can you win solely on the contention that your client was engaged in providing legal advice to Foster as to how to respond to the subpoena? And if so, what precedent would you rely on to support that contention? I will answer that question. But before, the focus is the function, not the exercising of the discretion. Yeah, I understand. The function would be giving legal advice as a government attorney to Foster in responding to a subpoena. But to your point, you had commented that she knew that she had to produce the material to Ms. Farrakh, and so therefore... No, I take the point. You're back on the point that it matters that she was prosecuting Farrakh. I want you to assume it doesn't matter. And I want to see if you have an argument that your client is entitled to absolute immunity even if we imagine she is just another person in the office that Foster consults about how to respond to the subpoena. Well, Vandekamp, in part, addresses that point. It deals with the superior, but it does speak more broadly to the conscience. She's not a superior. She is a person of knowledge. She's not the superior here. And furthermore, the attorney general's office takes the position in the filings in the superior court that they are merely third parties responding as another third party to a subpoena request, that they are not the prosecutors in the case. Isn't that dispositive of your claim? It is not dispositive. Why not? First of all, the government's position can't bind my client, number one. And number two, again... I'm sorry. Your client influenced the attorney general's office and how it responded. You don't think that the attorney general's office assertion that she is that office is not the prosecutor? They're merely third parties responding to a subpoena request? Has anything to do with her defense in this case? I said it can't bind her, a statement made by the attorney general. And again, I'm simply focusing on the functional test requires this court... The statement is made by Mr. Foster, I believe, who she has been telling, I want you to suppress this evidence. That's not the allegation. Even if you were right that it can't bind her, that would be an issue of fact as to whether she was aware of being made a protestor. I don't think it's a dispositive fact either way, but my point is... But you have to assume, for purposes of today's argument, that she was involved in representing to the superior court that she was not acting as a prosecutor in this case. She did not represent, and there's no allegation that she represented. The AG did. While she was in a superior position there, it concerned her. As an issue of fact, maybe you could show that somehow she was oblivious to that. Well... Is there an affidavit from her saying she was oblivious to it? Well, no, this is a 12B6, so... Is that what you brought, and we are now required to accept as true all of the allegations of the complaint? I understand. I mean, it was your choice to do this. I'm sorry? It was your choice to move at this point on the basis of the pleadings. I understand that, and it remains our position that when analyzing the functional test, the function that she was carrying out... Okay, I believe Judge Barron may have a question for you. Go ahead, Judge Barron. The word prosecutor is throwing me off, because you seem to be running two different arguments for prosecutorial immunity. Okay? One of them would be in the classic sense, the person is a criminal prosecutor, acting as a criminal prosecutor. The other argument you're running, as I understand it, is based on Barrett, Terese Volter-Butts, and the like, that a government attorney in an advocacy role in litigation gets the same absolute immunity as a criminal prosecutor does. Correct. Okay, so now, great, we're on the same page. We've never... I don't know that we have authority saying that, the First Circuit case saying that, but it may be that it's just we don't have any option because the Supreme Court's made that clear and all the other circuits say it, so fine, let's take that as a given. That would suggest that there is then a question, does Foster get absolute immunity in responding to the subpoena? Judge Lynch's question to you, I take it, was, even if there are circumstances in which a government attorney not acting as a criminal prosecutor, say, bringing FTC civil enforcement action, gets the same immunity as a criminal prosecutor, is it the case that a government attorney simply responding to a subpoena as a third party witness also gets that absolute immunity? What authority do you have for that proposition? Because if you don't have any, it would be impossible to say that your client advising Foster gets the absolute immunity, right? So the answer to your question is Imler, Vandekamp, and Reed. Imler says a government lawyer performing an advocacy function in connection with a judicial proceeding... But Imler was playing the role of criminal prosecutor. I understand, but... And Vandekamp, they're also talking about a person playing the role of criminal prosecutor and supervising it. So what I'm asking you is, is there any case outside the context of a person acting as a criminal prosecutor in which the response to a subpoena by that government attorney gets the kind of absolute immunity that Barrett suggests civil government attorneys in litigation may sometimes get? I am not aware of a case in which a... To your effect. Okay. And I think, quite frankly, that's a function of, and it's sort of an argument for another day, that that's where we started, which is this is, I believe, the basis of the 1983 claim is an alleged Brady violation. So could you just... There's no Brady violation here, but I know we're assuming that for purposes of this argument. You know, that may be relevant on qualified immunity, but that's not the question before us. I understand. And it seems to me paragraph 434 goes beyond saying that she's being sued for her violation of Brady as opposed to concealing Brady material. Well, it speaks for itself, and obviously... Well, that's what it says, in fact, concealing Brady material. Because as I understood your argument, you want to say, if they're suing her for a Brady violation and that's the suit, then if she did violate Brady, it must have been as a prosecutor. Kind of a neat argument. But as we have to read under Rule 12, that allegation, 434 seems to go well beyond that. No, I appreciate that. My point is that if she has a Brady obligation, if the court concludes that she has a Brady obligation, the only basis upon which she can be exercising those Brady duties is through the exercise of discretion. But that's clearly not true, because a police officer doesn't have a Brady obligation, but they can be sued and they don't get absolute immunity when they advise on whether Brady material has to be turned over. But she was, at that moment in time, a prosecutor. Yeah, okay, I get the point. Prosecuting Sonia Frank at that moment in time. And if you look at the judge's decision, they say, because Merrick decided the mental health sheet should not be turned over. That decision implicates one's exercise of discretion by virtue of her standing position as a prosecutor. Given the fact that she did disclose it in the case in which she was a prosecutor, it seems to be a rather weak argument. You've reserved some time. Thank you. You are not here to defend the question of whether Section 1983 permits the cause of action against someone in this position for a Brady violation. I hope you understand that's not our issue. The issue is prosecutorial immunity. Thank you, Your Honor. Luke Ryan, I represent the plaintiff in this. Rolando Pinate, Plaintiff Petley. I think Your Honor has hit upon the critical distinction in this case, which takes it out of the realm of Imbler and Van de Kamp and Reed, in that Ms. Kismerick was not functioning as Rolando Pinate's prosecutor. What about the Barrett case and the finding that the state officials there were entitled to immunity? I know it's just the Second Circuit. It's not the Supreme Court. But much of his argument is based on that. Right. And I think what you have in Barrett is you have a state attorney general who is a party to litigation. And what the Second Circuit did in that case was they essentially said that the underlying rationale for prosecutorial immunity is still present, not present to the degree it is in a criminal prosecution where a party prosecuted is apt to not like that very much and be disgruntled and engage in vexatious litigation. If you search absolute immunity on Westlaw, you're going to find hundreds of cases that have been filed by pro se inmates against the people responsible for their confinement. In Barrett, they're essentially saying, well, that kind of impulse in an unhappy party isn't present to the same degree. It can still exist. And so the same rationale applies. When a government attorney is defending a civil action as representing a party, the principles of absolute immunity apply. That clearly isn't the case here. Ms. Kazmarek didn't represent a party to a civil action. She didn't. And neither did Ms. Foster. I think that the attorney generals who appeared in this case, either on the record or off the record, did so in a way that was completely analogous to the federal attorneys in that Barrett case who were operating behind the scenes and conspiring. Well, see, the thing that's a little bit different is, if I understand it, the federal attorneys in Barrett weren't responding to anything. They weren't disclosing something. Right. Here there is a legal request from the court to a government attorney, and the government attorney is then exercising legal judgment in trying to decide how to respond to that subpoena. That's what Foster was doing. Right. So I guess the question is, how are we supposed to deal with that situation? You're clearly right. It's different than being in litigation representing a party. It's different than being a criminal prosecutor. On the other hand, it's different than the federal prosecutors in Barrett who simply choose not to turn something over. So how are we supposed to think about, or I'm supposed to think about, those cases that seem protective of the government attorney's exercise of legal discretion in dealing with public proceedings, responding to a subpoena as public. The court can oversee. If they don't follow their obligations, the court can punish them, hold them in contempt, sanction them. So it's not all in the dark. Why, on top of that, every time a government attorney responds to a subpoena, should they be at risk of a civil lawsuit for how they responded to it? Because you might think some of the same policy concerns that apply to absolute immunity in these other civil contexts should apply in that context. So what's the answer to that? I think the first answer goes to the burden here. As Mr. Rich said, there's really not a case out there that kind of covers this. And if he can't find a case and I can't find a case, that means I win the case. There's no case. There's no case. We have to figure it out. Right. But if you're thinking about where this kind of class of attorneys fall, they're falling maybe between representing a party like the state attorney general in Barrett or the federal attorneys who aren't really known to anyone in Barrett. I think you're in a place of, again, applying the underlying rationale here. And as an evidence custodian, these are not people who are going to be in the position, absent unusual extraordinary circumstances that bring us here today, where their exercise of discretion or their advocacy function is going to trigger vexatious litigation. The rationale for this radical doctrine of immunity from having to participate in litigation, it just doesn't apply. So I think that without the guidance, you're in a position where the burden is on the party claiming this form of immunity. Okay. So the second string to his argument is, so the district court gave Foster absolute immunity. And because she was advising Foster, she is in the role of providing advice to someone who has been given absolute immunity as a prosecutor. Now, you can respond it was a mistake to give Foster absolute immunity. That issue isn't really before us. But deal with the second prong of that argument. Well, I think, and as you know, I did in the brief, not concede that the district court respectfully got it right with respect to Ms. Foster. But I think you can, as the district court did, distinguish between these two assistant attorneys general. Ms. Foster was in court. She was making arguments. And again, one of the underlying rationales here is you're not necessarily See, that is Vandekamp to some extent, right? You have one person in court. But then you have the behind-the-scenes people who help that person who's in court. And I understood Vandekamp to have some fairly broad language suggesting those behind-the-scenes people who are assisting the person in court get the absolute immunity that the person in court gets. They do when it's an office decision about how to initiate or whether to initiate and how to present the state's case. We're not in the realm of Vandekamp because this isn't But that's dependent on concluding that it's wrong to say Foster gets absolute immunity. In other words, if Foster gets absolute immunity, it must be he's engaged in some activity that is of the kind Vandekamp thinks is an activity for which you get absolute immunity. So then why aren't people assisting him entitled to it as well? What's the argument? Is it that the defendant, the appellant here, was not advising? I think what you have here with Ms. Kusmarek is a complaint that alleges that she was doing things independent of Chris Foster, that there was representations made to Chris Foster about the state as the evidence. She was the gatekeeper. Let me ask you about that. There's an allegation. Foster filed a motion to quash the subpoena served on Kusmarek. And in that motion he wrote, there is nothing to indicate that the allegations against Barrett date back to the time she tested the drugs in the defendant's case. We now know that as a matter of fact that was just flatly wrong. Is your theory that Foster didn't know that so he might get off the hook, but Kusmarek, who told him that, knew it was a lie? I think there's some support in the complaint for that distinction. I thought the complaint said that she told Foster about the files. Ms. Kusmarek told Ms. Foster that there were these mental health records and that they were irrelevant to Mr. Panate's case. Okay, so just an answer to Judge Kiyota's question. Yes. They had the same knowledge, Foster and Kusmarek, with respect to this material. Am I wrong? I disagree to the extent that Ms. Foster, there's no indication. The complaint alleges that she never actually possessed these things and she was just going off of whatever Ann Kusmarek told her. So Ann Kusmarek is giving her false information. What's the false information? That it's, as Judge Kiyota just read, that there's no evidence that the misconduct dated back to the time. So the dates, you're saying Foster, your allegation is that Foster was put aware, was made aware that there were these materials. Correct. But you're also saying that Foster was told they're not relevant because, as a matter of fact, their chronology doesn't mesh up with the defendant's case. I don't think that there was a representation chronology-wise. I think what we have in the complaint, based on the evidence that came to light during lengthy evidentiary proceedings, was that Ms. Kusmarek was just telling Ms. Foster, these are irrelevant, they're protected. But that's not a factual representation, is it? Why wouldn't that be a legal representation? Well, I think it is a legal representation, but she wasn't, I don't have anything in the complaint that it's because, well, actually the passage speaks for itself in that the allegations date back a formal period. Okay. Yeah, so one can draw the inference that Foster's misrepresentation as to the chronology had to have been derived from the defendant in this case. What do you make of the Attorney General's official position stated to the state courts that they were merely third parties responding as any third party? I think, as you just pointed out previously, that I think is dispositive to this idea that Ms. Kusmarek was in any way acting as a prosecutor, functioning as a prosecutor. The conduct she engaged in might have been similar to what prosecutors do, but when her office is going into court and saying, we're not prosecuting Mr. Panate, we're just a third party here responding to subpoenas, that I think deems a claim for prosecution. But it didn't stop the court from giving immunity to Foster. So in defense of that ruling, I suppose the argument is, well, Foster actually was advising the real prosecutor in the case, one step away in that. But Kusmarek is further steps away from Foster and from the actual prosecution. I believe that's correct. And I think what we're left with here is we just look at the legal landscape here. This court's decision from two years ago in filler, I think, puts the court in a position to make really short work of this interlocutory appeal. As you wrote, Judge Barron, the prosecutor functioning as a prosecutor in a criminal case does not have that same kind of immunity when he or she steps outside that role and starts giving advice to police not to- But there the key issue was whether that advice was in the pre-investigatory phase. That was the factual thing that was unclear, which is why we concluded that we didn't have jurisdiction to review it, because it wasn't clear whether the party was saying it depended on that fact or not. So we're just in a different ballgame here, because the contention is that you're now advising on a court proceeding. And to the extent that would be true, it triggers the Barrett issue. As I read filler, where I think the court ultimately dismissed the appeal as opposed to affirming a denial of an invocation of absolute immunity, was it was unclear whether or not the prosecutor in that case was telling the police not to comply with a subpoena in a parallel civil proceeding for custody and divorce. There were two separate things. Right. Right. And the way I read filler is that it was pretty clear. It turned out factually that that's where the advice was given, that you can't be a prosecutor. You stepped outside- We just didn't have to reach that issue there, because there was a dispute as to what was the content of the behavior. Right. So since the facts were unclear, we can't do that interlocutory review. Right. And here I think this idea that we're dealing with a derivative proceeding with Panate, I think it's a clever term of art that counsel is attempting to kind of bring these two, Barrett prosecution and Panate prosecution together, but it's not a derivative prosecution. It's in a different county. It's being handled by a completely different agency. And I think that the work done in the case by Ms. Kazmarek is far-field from anything that would entitle her to absolute immunity. The other case that I just have to mention, because every time I've mentioned it in writing or in argument, there just hasn't been a response to is the Third Circuit's decision in the Dawson case. And in Dawson, you had a district attorney who initiated a prosecution against a political rival and then brought in a special prosecutor who ultimately determined they weren't going to proceed. The special prosecutor announced that decision. The district attorney said, hey, wait a minute. This defendant confessed to me. And at that point, it jump-started the prosecution. Afterwards, the Third Circuit said, for that act of initiating the prosecution, that district attorney, even if it was done in bad faith, even if there was no legitimate basis, yes, you get absolute immunity for that. But when you relinquish control of that prosecution to the special prosecutor, what comes next? You're no longer functioning as a prosecutor and, therefore, absolute immunity doesn't apply. I just want to nail down one last point, which is setting everything to one side and assuming it's all against you. If we only get down to the question of what we should decide about whether Kaczmarek was advising Foster, what is your position as to what the record shows with respect to whether the actions that are alleged she engaged in constitute providing legal advice to Foster? I don't think she enjoys protection for providing legal advice. Not whether she does. Was she engaged in providing legal advice to Foster with respect to the subpoena and the motion to quash? She was not providing legal advice to her. She was the witness who was the subject of the subpoena, and she was making factual representations to Foster that I don't have possessed anything relevant. Was every subpoena issue a subpoena to her, though? I thought there were also subpoenas that were to the office, not her. So with respect to those, would you say she was just a fact witness as opposed to somebody who was providing legal advice? Correct. And, functionally, she's not in the unit that responds to subpoenas or requests for. She's acting as a prosecutor. They have the appeals unit that handles subpoenas and requests for documents. So she is not acting as an attorney as much as somebody who's just telling her, here's what I possess, here's what the office possesses. Thank you very much. Thank you. Thank you. I'll be brief, obviously. First of all, Vandekamp specifically uses the word supervisor or colleague. So it is not, in that case, language right from the U.S. Supreme Court does that. Second of all, to Judge Kayada's question, I went back and I looked. Paragraph 431 of the complaint, which is within count four, says, Defendant Kaczmarek knew she had duties under the United States Constitution to disclose Brady materials. So therein lies the group. Well, sure. That's 431. Yes. But he's got 434, which says something different. And on a Rule 12B6 motion, which you brought, we read the complaint in its alternative forms. Well, 430, it talks about deliberate indifference to their legal obligations. And the legal obligations come back to Brady. Well, the legal obligation is imposed by Section 1983 not to interfere with the Brady obligations that the state has. Okay. Fair enough. The final point, if I might, is really sort of to try and frame the issue, if I could, really focusing back on it's the nature of the function that is to be performed by the government attorney. Whether the government attorney actually doesn't exercise that discretion at all, the Reid case says, doesn't matter. Whether they do so reprehensibly, I'm sorry. Yeah, let me stay with that because I think that's your most important point. How do you respond to the claim, as I understand it from the plaintiff, that there's the potential function of advising in connection with a legal matter being handled by the AG's office, on the one hand. And on the other hand, serving as a witness. If someone is, like, take this. Suppose the officer discovers the diary in the car, tells only Kaczmarek. The two of them agree they're going to tell no one else that this was in the car because it would damage a luncheon. And so when Foster comes to her with a subpoena and says, do you have anything that would show the dates? She simply says, no. That's it. Would you agree that in that situation, immunity would not apply to her? I don't agree with that. So that's what puzzles me. It's simply acting as a witness, giving a lie, and no legal advice. There's no legal judgment involved in that. She's the person who either has the file or doesn't. Because she is performing an advocacy function as a government lawyer, exercising, or at least the function itself requires the exercise of discretion to make a judgment. You think there's discretion in advocacy judgment involved in a flat-out lie? And my hypothetical, do you have this? No, I don't. That's what the Reed case says. The Reed case says that, because in that case, there was a court order. And the argument in the Reed case was that the fact that there was an order of the court related to prosecution. But didn't Reed involve the actual prosecutor? I recognize that the points are different. Yeah, a rather important distinction. Well, but it's the nature of, Buckley teaches, it's the nature of the function, not the identity of the act. Yeah, but we're trying to figure out when there's no ongoing prosecution and all you're doing is responding to a request about a subpoena, whether the actual function is being a witness or being a legal advocate. But at every moment, and that's why I say... Now you go back to Frock, but just don't for a second. Okay. Just isolating on this point, with respect to Judge Cata's question. Okay. Why, when you just say no, and there's no ongoing prosecution, I know you say there is, but if there wasn't, why in that instance should we view you as acting as anything other than a fact witness as opposed to a legal advocate? I assume Judge Cata's question was based on... I got it. ...a hybrid of this fact pattern where she was acting as the prosecutor, or was prosecuting Frock. You want me to answer your question as if this is some government lawyer who's sitting in an office somewhere who's asked a question and that government lawyer isn't performing an advocacy function in connection with a judicial process? The answer to your question would be, no, she isn't entitled, or the government's attorney isn't entitled to immunity. But now if I change it slightly and I say, what she was asked is, is there anything in the file? And then she makes a judgment as to what the file consists of and says, well, if you ask about file, file means X, not Y, would your answer then be different? And you would say in that type of response she does get absolute immunity? As the way in which it's framed in this complaint, in paragraph 304, Kesner decided to embrace an unduly restrictive interpretation of the word file. So you say that's an advocacy function, given the way it's alleged. I think that requires legal knowledge and an exercise in discretion into how and whether to proceed. And that's a quote directly from Dandie. Or it's a euphemism for lie. Well, again, Your Honor, I would say suborning perjury, read in inverse, say is entitled to absolute immunity. Misleading the court, read, is entitled to absolute immunity. But those are cases where you're acting as a prosecutor. That's the problem we have here. The AG tells the court she's not acting as a prosecutor. She's just a third party. And then in her capacity as a third party, at least the allegation is, she lies about the relevant chronology to Foster, causing Foster to then make a false representation to the court. I understand. But I'm focusing, I think you have to analyze each of these issues separately. First you look at the function, I'm sorry, the nature of the activities and the function being performed, because under that analysis it's irrelevant the identity of the actor or the role that that actor plays. So that's part A of the analysis to which I'm answering your question. And then there is a separate and distinct issue as to what role she's actually playing. But my argument to the court is the identity of the actor doesn't matter. It's the nature of the function performed. That's a quote from Buckley from the U.S. Supreme Court. And the question is whether the conduct is intimately associated with the judicial phase of the criminal process. Watson-Bannekin. Admittedly, she isn't the prosecutor in that particular criminal process, but she is only brought into the epicenter by virtue of her conduct as the prosecutor. There's one more question. One more. So the nub of your argument, the more you push it, seems to be dependent on the fact that she was prosecuting the Farrakh case. And because the information that's being asked for is information that she holds in relation to that ongoing criminal prosecution. So is your position that there is simply no court order of any kind that can ever be made to a prosecutor, an ongoing case, even when it relates to a completely distinct matter? That she has to answer truthfully without being subject to any potential liability? Because there is a Third Circuit case in which there's a material witness question from a judge. He orders, is there a material witness present right now? And the prosecutor gives a false answer about it. And they say there is liability in that circumstance because it's just a direct question. So you seem to take a pretty extreme view that just because the evidence is within the possession of a criminal prosecutor during the prosecution, any request that touches on that evidence, no matter how far afield it is from the actual prosecution that she has, she has absolute immunity in how she answers. So are you referring to the Dawson case? Is that the Third Circuit case? Is that the one that my brother counsel was referring to or is it a different case? It's different. Forget the case. Forget the case. Again, I really come back to the basic premise of this particular fact matter. That she is then and at all times actively prosecuting Sonia Farrar. That she is... Okay, thank you. We get it. Thank you. Thank you.